Argued and submitted September 7, peremptory writ granted December 30, 1982

STATE ex rel LA MANUFACTURE
FRANCAISE DES PNEUMATIQUES MICHELIN,
*Plaintiff-relator,*

*v.*

WELLS,
*Defendant.*

(SC 28638)

657 P2d 207

Denny Z. Zikes, Portland, argued the cause for defendant. With him on the brief were Eric R. Friedman and Fellows, McCarthy, Zikes & Kayser, P.C., Portland.

Alex Byler, Pendleton, argued the cause for plaintiff-relator. On the brief were Douglas E. Hojem and Corey, Byler & Rew, Pendleton.

TANZER, J.

## TANZER, J.

This mandamus proceeding is brought by La Manufacture Francaise Des Pneumatiques Michelin (Michelin France), a French corporation, to compel a judge to dismiss a complaint filed against it in the Circuit Court for Umatilla County by Lamb-Weston, Inc., an Oregon corporation. In this case and in *State ex rel Hydraulic Servocontrols Corp. v. Dale,* 294 Or 381, 657 P2d 211 (1982), we consider for the first time the reach of Oregon's long-arm statute, ORCP 4, and the implication of *World-Wide Volkswagen Corp. v. Woodson,* 444 US 286, 100 S Ct 559, 62 L Ed 2d 490 (1980).

The underlying action began with a complaint in products liability filed by Lamb-Weston, an Oregon corporation, against Michelin Tire Corporation (Michelin USA), a New York corporation, an American distributor of Michelin products. Lamb-Weston amended its complaint to add the manufacturer, Michelin France, as a defendant. The amended complaint alleged generally that Michelin France engaged in substantial activities within this state and the United States and that it manufactured and introduced a radial tire into the chain of commerce for use in the United States of America. It further alleged that Lamb-Weston installed the tire on a truck used in its business, that the tire was defective and unreasonably dangerous at the time of manufacture and that it caused damage to the truck in the amount of $13,578.53 and lost profits of $15,742.08 when it exploded on a highway. The places of purchase, installation and explosion of the tire which allegedly caused the accident were not specified in the complaint.

Michelin France moved to dismiss on several grounds, including that the Circuit Court of the State of Oregon for Umatilla County lacked jurisdiction over it. The accompanying affidavits state that Michelin France manufactures no products in the United States and maintains no facilities or offices here. It sells products to only two United States purchasers, Michelin USA and Sears, Roebuck & Co., and has no corporate connections with either of them. The products are sold to Michelin USA and Sears, Roebuck & Co. f.o.b. France. It maintains no

registered agent authorized to accept service of process in any state.[1] In short, Michelin France has attempted to structure its business dealings to avoid corporate contacts in the United States. Michelin France also showed by affidavit that the accident for which claim is made occurred in the state of Washington.

We have previously held that an out-of-state manufacturer may be called to account in the courts of this state when an Oregon resident is damaged in Oregon by its products. *State ex rel Western Seed v. Campbell,* 250 Or 262, 442 P2d 215 (1968). Since that time, Oregon jurisdictional statutes have undergone revision so that it is necessary to consider anew the liability of distant manufacturers to suit in this state. Now, under the new rule, ORCP 4, the issue in this case is whether Michelin France, which seeks through others to serve a nationwide market, can be called to account in an Oregon court on the sole basis that one of its products injures an Oregon resident.

The first step in a jurisdictional inquiry is to determine whether any of the specific provisions of ORCP 4 apply. The burden was on Lamb-Weston to allege and prove facts sufficient to establish jurisdiction. *State ex rel Sweere v. Crookham,* 289 Or 3, 6, 609 P2d 361 (1980). We find that it has failed to establish facts which would bring this case within any of the specific provisions of ORCP 4.[2]

---

[1] It does, however, maintain an agent for the limited purpose of accepting service under the National Traffic and Motor Vehicle Safety Act, 15 USC § 1301 *et seq.* (1966).

[2] The parties addressed their argument and briefs to three specific provisions of ORCP 4:

"A court of this state having jurisdiction of the subject matter has jurisdiction over a party served in an action pursuant to Rule 7 under any of the following circumstances:

A. In any action whether arising within or without this state, against a defendant who when the action is commenced:

* * * * *

A.(4) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise * * *.

* * * * *

C. In any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant.

In the absence of an applicable specific jurisdictional provision, we turn to the general provision, ORCP 4L, which extends jurisdiction

"* * * in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."

By the terms of this provision, we must determine whether or not exercise of jurisdiction over this defendant comports with the requirements of due process.

As in *Hydraulic Servocontrols,* the due process requirement of "minimum contacts" as established in *International Shoe Co. v. Washington,* 326 US 310, 66 S Ct 154, 90 L Ed 95 (1945), is the starting point for analysis. That requirement has been most recently refined in *World-Wide Volkswagen Corp. v. Woodson, supra,* a case which is factually different from this one but nonetheless instructive. There, a foreign made automobile allegedly injured its purchaser. Plaintiffs bought it in New York and travelled with it to Oklahoma where the accident occurred. The United States Supreme Court refused to allow jurisdiction in Oklahoma over the Northeastern regional distributor and the New York retailer because neither had "purposefully avail[ed] itself of the privilege of conducting activities within the forum state." 444 US at 297, quoting *Hanson v. Denckla,* 357 US 235, 253, 78 S Ct 1228, 2 L Ed 2d 1283 (1958). It was only the "unilateral action" of the plaintiffs which took the automobile from New York to Oklahoma rather than any activity of the defendants.

---

\* \* \* \* \*

D. In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:

\* \* \* \* \*

D.(2) Products, materials, or things distributed, processed, serviced, or manufactured by the defendant were used or consumed within this state in the ordinary course of trade."

This record does not make out jurisdiction under the terms of any of them. Michelin France is not shown to conduct business here, and the plaintiff's unilateral action in making repairs and losing profits in Oregon does not affect plaintiff's liability to suit in Oregon. Even were we to construe these terms extremely broadly, we would still have to examine for conformity to due process.

To illustrate what it meant by "purposefully avails" the court contrasted the activities of the distributor with those of the manufacturer which presumably would be subject to jurisdiction.

"* * * [I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the *manufacturer* or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." (Our emphasis.) 444 US at 297-98.

From these principles we conclude that Lamb-Weston has not established facts sufficient to establish that Michelin France is subject to the jurisdiction of the Oregon courts in this case. The complaint allegation that Michelin France is engaged in substantial activities within Oregon and the United States is conclusory. There is nothing to tell us of the scope of Michelin USA's or Sears, Roebuck & Company's distribution of Michelin products in the United States and that is not a matter of which we can take judicial notice. Nevertheless, construing the pleadings and affidavits liberally in favor of jurisdiction for purposes of this case, it appears that Michelin France has sought indirectly to serve the Oregon market through a system of distribution by others which covers the United States. Although it has attempted to structure its business dealings so as to be immune to suit in the United States, it obtains an economic benefit from sale of its products in Oregon and it is therefore foreseeable, depending upon the current interpretation of the due process clause by the United States Supreme Court, that it could be called to account in Oregon courts. It might therefore be fair to Michelin France for an Oregon court to exercise jurisdiction, assuming other criteria are met.

The mere existence of general sales or use of Michelin France's products in Oregon is not enough for Oregon jurisdiction. There must be some fact of the case

itself other than the mere residence of the plaintiff which makes Oregon an appropriate forum. The United States Supreme Court emphasized in *World-Wide Volkswagen* that neither the minimum contact test nor the ease of modern transportation makes state lines immaterial in the allocation of litigation within the federal system. Rather, a function of the minimum contacts concept is "to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." 444 US at 292. The court "stressed that the Due Process Clause ensures not only fairness, but also the 'orderly administration of the laws.'" 444 US at 294. The concerns of federalism are so strong that

> "* * * [e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." (Citation omitted.) 444 US at 294.

"Minimum" is a relative term and respect for federalism is more an aspiration than a criterion, so it is desirable to state a more objective test to determine which contacts satisfy the minimum need and which do not. One commentator, upon reviewing the precedents, posits that there must be at least one contact with the forum state which is substantively relevant to the cause of action:

> "* * * A contact is related to the controversy if it is the geographical qualification of a fact relevant to the merits. A forum occurrence which would ordinarily be alleged as part of a comparable domestic complaint is a related contact. In contrast, an occurrence in the forum State of no relevance to a totally domestic cause of action is an unrelated contact, a purely jurisdictional allegation with no substantive purpose. If a fact is irrelevant in a purely domestic dispute, it does not suddenly become related to the controversy simply because there are multistate elements." (Footnotes omitted.) Brilmayer, *How Contacts Count: Due Process Limitations on State Court Jurisdiction,* 1980 Sup Ct Rev 77, 82-83 (1980).

By a substantively relevant contact, the writer means a fact which is alleged as part of the claim for relief.

This appears to be an apt test of constitutionality. It is consistent with the United States Supreme Court's later description of the rationale of the minimum contacts test being "the relationship among the defendant, the forum, and the litigation." *Rush v. Savchuk,* 444 US 320, 327, 100 S Ct 571, 62 L Ed 2d 516, 524 (1980), quoting *Shaffer v. Heitner,* 433 US 186, 204, 97 S Ct 2569, 53 L Ed 2d 683, 698 (1977). It is also generally consistent with the specific provisions of ORCP 4. Applying it to this case, the general distribution of Michelin France's products nationally and in Oregon has no relevance to the substance of this claim for relief. Here, unlike *Hydraulic Servocontrols,* no fact of substantive relevance, such as sale, use, accident or injury has been shown to have occurred in Oregon. Although it may be as fair to Michelin France to require it to answer in the courts of Oregon as elsewhere, the claim for relief has no substantive connection with Oregon which, as a matter of federal due process, would allow Oregon courts to exercise jurisdiction over Michelin France in this case.

The peremptory writ is granted.